IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

SHENNA D. SPENCER                                                PLAINTIFF

    v.                                    CIVIL NO. 20-3030

ANDREW M. SAUL, Commissioner
Social Security Administration                                  DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Shenna Diane Spencer, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability and disability insurance benefits ("DIB") under the provisions of Titles II of the Social Security Act ("Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g)

**I.**     **Procedural Background:**

Plaintiff protectively filed her disability application for DIB on March 10, 2017, with an alleged onset date of December 25, 2014, due to two back surgeries and insomnia. (Tr. 61, 75). For DIB purposes, Plaintiff maintained insured status through March 31, 2020. (Tr. 21, 61, 74). Plaintiff's application was denied initially and again upon reconsideration. (Tr. 88-90, 96- 97).

Plaintiff requested an administrative hearing which was held on June 20, 2018, in Harrison Arkansas. (Tr. 33-59, 98-105). At the hearing, Plaintiff appeared with counsel and testified. *Id*.

On February 27, 2019, the ALJ entered a fully unfavorable decision denying Plaintiff's application for DIB. (Tr. 18-27). The ALJ determined Plaintiff had the following severe

impairments: disorder of the spine and degenerative disc disease. (Tr. 23, Finding 3). Despite being severe, the ALJ opined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 24, Finding 4).

The ALJ found Plaintiff had not engaged in substantial gainful activity since December 25, 2014, her alleged onset date. (Tr. 23, Finding 2). The ALJ also determined Plaintiff was thirty (30) years old, on her alleged onset date, which is defined as a younger individual under 20 C.F.R. § 404.1563(c) (2008). (Tr. 26, Finding 7). The ALJ noted Plaintiff had at least a high school education and was able to communicate in English. (Tr. 26, Finding 8).

The ALJ found Plaintiff retained the Residual Functional Capacity, ("RFC") to do the following:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR [§] 404.1567(a) except occasional climbing of ramps, stairs, ladders, ropes, and scaffolds. She is limited to occasional balance, stoop, kneel, crouch, and crawl. (Tr. 24, Finding 5).

The ALJ concluded Plaintiff was unable to perform any of her Past Relevant Work ("PRW") (Tr. 25, Finding 6) but with the assistance of a Vocational Expert ("VE"), found Plaintiff could perform work as a small products assembler, document preparer, and telephone information clerk. (Tr. 26, 56).

Plaintiff requested the Appeals Council's review of the ALJ's unfavorable disability determination which was denied on March 2, 2020. (Tr. 1-4). Plaintiff filed this action, which is before the undersigned pursuant to the consent of the parties. (ECF Nos. 2, 6). Both parties have filed appeal briefs, and the case is now ready for decision. (ECF Nos. 15, 16). The Court has

2

reviewed the entire transcript. As the complete set of facts and arguments are presented in the parties' briefs, they are repeated here only to the extent necessary.

## II.     Evidence Presented

On June 14, 2015, Plaintiff was seen at the North Arkansas Regional Medical Center Emergency Department by Joseph Thomas, APRN. (Tr. 324). Plaintiff complained of a headache and dizziness, reporting their onset two weeks prior. *Id*. Plaintiff also reported nausea. *Id*. Plaintiff's physical exam was normal and showed a full range of motion in her extremities. (Tr. 326-327). Nurse Thomas's primary impression was Cephalgia with the additional impression of an adverse drug reaction; Thomas prescribed Promethazine; instructed Plaintiff to decrease Lamictal to 100mg; and follow up with Robert M. Causey, M.D., to review medications. (Tr. 330).

On September 28, 2015, Plaintiff presented to Crossroads Medical Clinic with complaints of insomnia and requested a check of her hormones. (Tr. 425). She reported that her mood was good and that she was doing well overall. *Id*. Plaintiff was assessed with other malaise and fatigue, initial insomnia, and tiredness and was given samples of two prescription sleep aides. *Id*.

On February 2, 2016, Plaintiff presented to North Arkansas Regional Medical Center MediQuick under the care of Larry Johnson, PA. (Tr. 461). She complained of sinus pain in her eyes, nose, and teeth, denying muscle aches, joint pain, and swollen joints. (Tr. 461-462). She had a normal musculoskeletal exam and had normal deep tendon reflexes in her upper and lower extremities. (Tr. 462). She was assessed with acute sinusitis and prescribed Zithromax. *Id*.

On September 9, 2016, Plaintiff was seen by Nicole L. Rasmussen, APRN, at the North Arkansas Regional Medical Center Emergency Department with complaints of indigestion, epigastric pain radiating to her right chest, and neck pain for the past ten days. (Tr. 343). Plaintiff's

symptoms were exacerbated by eating and she reported diminished appetite, denying vomiting but reporting diarrhea. *Id.* She had no fever, shortness of breath or cough, and was taking Cefdinir for a sinus infection. *Id.* According to the review of Plaintiff's systems, she denied back pain, joint pain, joint swelling, muscle pain, muscle stiffness, and neck pain. (Tr. 345). She also denied anxiety, depression, emotional problems, headache, numbness, tingling, and weakness. *Id.* Plaintiff had a normal examination with painless range of motion in her back and full range of motion in her extremities. (Tr. 345-346). An EKG revealed no acute ischemia/injury and Plaintiff's chest x-ray was normal. (Tr. 349). Nurse Rasmussen's primary impression was Gastritis; Plaintiff was, prescribed Prilosec and advised to see her primary care physician. (Tr. 349-350).

Six days later, Plaintiff presented to Crossroads Medical Clinic reporting heartburn and pain in the right side of her neck. (Tr. 421). Plaintiff had a complete work-up at the Emergency Room and felt like there is a knot her throat when she starts eating. *Id.* She was given Omeprazole at the Emergency Room; however, it did not help much. *Id.* Plaintiff noted she can drink water but even soda brings about the feeling of a lump in her throat. *Id.* Plaintiff was concerned about trigeminal neuralgia because her father has it. *Id.* According to her physical exam, her neck was supple without significant lymphadenopathy or thyromegaly. (Tr. 422). Her extremities showed no cyanosis, clubbing, or edema. *Id.* In addition, her reflexes, and gait were normal. *Id.* Ruth Meyer, PA, assessed Plaintiff with a swallowing problem; feeling of lump in throat; pain in the face; and neck pain. *Id.* Plaintiff was prescribed Ranitidine 300 mg oral capsule and instructed to take one pill daily for two weeks. *Id.* Plaintiff was advised to keep her appointment with Dr. Bell, increase her fluids, and take Tylenol or Motrin for fever or pain. *Id.*

On December 8, 2016, Plaintiff was admitted to North Arkansas Regional Medical Center Emergency Department under the care of Bryan S. Shearer, M.D. (Tr. 360). Plaintiff presented with generalized weakness, cough, and shortness of breath. *Id*. Dr. Shearer noted at triage, Plaintiff was not tachycardic. *Id*. Plaintiff had a room air saturation of ninety-eight to one hundred percent. *Id*. Plaintiff was not tachypneic; however, she stated her skin feels hot from time to time. *Id*. She was seen at her primary care provider's office the day before and had a chest x-ray that was suggestive of pneumonia. *Id*. As a result, Plaintiff was prescribed Levaquin; however, after one dose she started having leg cramps in her right thigh she interpreted as a normal allergic reaction. *Id*. Subsequently, Plaintiff started Clindamycin, which she had been taking for less than one day. *Id*. Her physical exam revealed normal findings and according to Dr. Shearer's progress notes, her labs were unremarkable. (Tr. 362-365). Dr. Shearer found Plaintiff's chest clear to auscultation bilaterally and did not feel a repeat chest x-ray would give him any new information. (Tr. 364). Dr. Shearer further opined Plaintiff has already been diagnosed with reported pneumonia, however, "clinically the patient does not look bad." *Id*. Dr. Shearer's primary impression was an upper respiratory infection with cough and congestion. (Tr. 365). Plaintiff was on antibiotics prescribed by her primary care provider for possible pneumonia and was encouraged to complete that course and given strict return precautions for any worsening concerning symptoms. *Id*.

On December 17, 2016, Plaintiff again returned to North Arkansas Regional Medical Center Emergency Department with complaints of ongoing pneumonia for two weeks. (Tr. 372). She denied any back pain, joint pain, headache, numbness, tingling, joint swelling, muscle pain, muscle stiffness, and neck pain. (Tr. 374). She had a normal physical exam and full range of

motion in her extremities. (Tr. 376). Joseph Thomas, APRN, assessed Plaintiff with left lower lobe pneumonia and prescribed Plaintiff Azithromycin. (Tr. 378).

On April 10, 2017, Plaintiff presented to Crossroads Medical Clinic with neck pain, a sore throat, earache, and back pain. (Tr. 415-416). In her physical exam, Plaintiff's extremities were without cyanosis, clubbing, or edema. (Tr. 416). She had bilateral sciatic pain, "with R>L." and reported her right toes were numb. *Id*. Plaintiff was assessed with allergic rhinitis, earache, sore throat, and acute low back pain, and an MRI of the lumbar spine was recommended. *Id*.

Ten days later, Plaintiff underwent an MRI of her lumbar spine at North Arkansas Regional Medical Center which revealed mild congenital bony canal stenosis. (Tr. 389). Straightening of normal lumbar lordosis was seen but no scoliotic curvature abnormalities were identified. *Id*. Charles D. Sessions, M.D., opined there were postsurgical changes at Plaintiff's L5/S1 with two-level moderate lumbar spondylosis at L4/L5 and L5/S1 which is worse at L5/S1 but no enhancing granulation tissue nor vertebral body compression fracture was identified by the MRI. *Id*.

On June 19, 2017, Plaintiff saw Shannon Brownfield, M.D., for a physical consultative examination. (Tr. 405-409). Dr. Brownfield, noted Plaintiff's normal range of motion in her shoulders, elbows, wrists, hands, hips, knees, ankles, cervical spine, and lumbar spine, with negative straight leg raises. (Tr. 407-408). Plaintiff's reflexes in her biceps, triceps, and Achilles were 2+ bilaterally; however, her Patellar reflexes were 3+ bilaterally. (Tr. 408). She had no muscle atrophy or sensory abnormalities; although, she had decreased muscle strength (three out of five) and a mild limp in her left lower extremity. *Id*. She had a normal bilateral grip, could hold a pen and write, touch fingertips to palm, oppose thumb to fingers, pick up a coin, stand/walk without assistive devices, walk on heel and toes, and squat/arise from a squatting position; however, it was difficult for her to stand up from a squatted position. *Id*. Based on Dr. Brownfields

evaluation, she opined Plaintiff had severe limitations in lifting, holding position for a prolonged time, and use of the back. (Tr. 409).

On July 7, 2017, Plaintiff saw Scott Schlesinger, M.D., at Legacy Spine and Neurological Specialists. (Tr. 548-55). Plaintiff's chief complaints were low back pain and bilateral leg pain, with secondary complaints of numbness and tingling in her feet. (Tr. 548). Plaintiff reported her pain had somewhat improved in the last few days. *Id*. Her history noted that she was first seen in 2003 and underwent a L5/S1 Discectomy which provided significant relief. *Id*. Plaintiff returned in 2007 with recurring left leg pain and underwent another L5/S1 Discectomy which gave her significant relief. *Id*. She denied any current treatments but reported constant problems with symptoms progressively worsening over time and being aggravated by prolonged sitting, prolonged standing, and daily activities. (Tr. 549). Plaintiff reported pain in her lower back and left leg, describing it as achy and weak without relief, and described her medication regime as Aleve 220 mg capsule, Ibuprofen 200 mg capsule, Alprazolam 1 mg tablet, and Lamictal 100 mg tablet. *Id*. Dr. Schlesinger noted reduced range of motion in her lumbar spine; however, Plaintiff's range of motion in the joints of her lower extremities were without limitations, her deep tendon reflexes were normal, and her gait was within normal limits. (Tr. 551-552). Plaintiff exhibited a negative Patrick's test bilaterally for hip pathology and mild lumbar tenderness was noted. (Tr. 551). Plaintiff had negative straight leg raising tests bilaterally and normal motor exam, no fasciculation nor atrophy noted. (Tr. 551-552). However, Dr. Schlesinger noted Plaintiff had reduced touch sensation in her feet. (Tr. 552). Dr. Schlesinger diagnosed Plaintiff with low back pain; pain in left and right legs; intervertebral lumbar disc degeneration and disc displacement; osseous and subluxation stenosis of intervertebral foramina of lumbar region; connective tissue and disc stenosis of the lumbar intervertebral foramina; and lumbar spinal stenosis. (Tr. 554). Dr.

Schlesinger discussed options for treatment, including conservative care with further diagnostic testing; physical therapy; chiropractic treatment; anti-inflammatory and steroid medications, and epidural steroid injections. *Id*. Plaintiff was prescribed Mobic, Gabapentin, and physical therapy with Dr. Schlesinger advising, "[i]f the pain returns to severe or worsens enough to desire further treatment I would suggest we try LESI as the next step at L5/S1 and/or L4-5." *Id*.

On August 2, 2017, Plaintiff returned to Crossroads Medical Clinic with fatigue and tingling and numbness in her hands. (Tr. 414). She wanted to discuss fibromyalgia and was concerned her Lamictal was not strong enough. *Id*. On examination her extremities were normal and her gait was within normal limits but she was positive for Tinel's and had diminished grip strength in her left hand compared to her right. *Id*. Plaintiff was assessed with myalgia, chronic depression, chronic anxiety, carpal tunnel syndrome in her left and right upper limb, and tiredness. *Id*. Lamictal 200 mg oral tablet was discontinued in favor of Lamictal XR 300 mg oral tablet. (Tr. 415).

On December 13, 2017, Plaintiff reported to Crossroads Medical Clinic with pain in her middle chest. (Tr. 507). She denied fever, chills, malaise, and was feeling generally well and her examination was essentially normal. *Id*. Plaintiff stated the feeling of food hanging up in her esophagus has worsened and causes pain. *Id*. Moreover, Plaintiff stated the Ranitidine did not help. *Id*. Plaintiff's medications at the time consisted of Alprazolam 1 mg oral tablet; Trimethoprim Sulfamethoxazole double strength tablets; Tri-Sprintec oral tablet; and Ventolin HFA 90 mcg/inh inhalation aerosol. *Id*. Plaintiff was assessed with difficulty swallowing and painful swallowing. *Id*. Plaintiff was advised that she is due for yearly physical, labs, pap, and immunizations within the next two weeks and was recommended for an Esophagogastroduodenoscopy ("EGD") procedure. (Tr. 507-508).

On December 22, 2017, Plaintiff presented to North Arkansas Regional Medical Center with abdominal pain. (Tr. 492). Plaintiff stated she had previously experienced gallbladder issues, but an ultrasound was negative, and had started taking Nexium for acid reflux. (Tr. 492-493). She reported her mid-epigastric pain migrated to her right upper quadrant; that the pain worsens after eating; and that she was pain free only upon waking. (Tr. 493). Charlie S. Rasmussen, D.O., assessed Plaintiff with Gastritis, prescribed Carafate, and instructed Plaintiff to continue taking Nexium as directed. (Tr. 498).

On March 26, 2018, Plaintiff presented to North Arkansas Regional Medical Center for an MRI of her head. (Tr. 485). Brandon C. Hicks, M.D., interpreted the brain MRI as normal. *Id*.

On April 13, 2018, Plaintiff reported to North Arkansas Regional Medical Center MediQuick for painful urination, pelvic pain, and lower back pain. (Tr. 450). Her abdomen revealed suprapubic tenderness and her musculoskeletal exam manifested costovertebral angle tenderness. *Id*. Roy Lee, M.D., concluded Plaintiff had a urinary tract infection without hematuria, site unspecified. *Id*. Dr. Lee prescribed Bactrim DS tablet, 800-160 mg and Pyridium tablet 200 mg. *Id*.

On April 26, 2018, Plaintiff returned to Crossroads Medical Clinic for a follow-up on a kidney infection. (Tr. 503-504). Plaintiff complained of dysuria and claimed it "started yesterday." (Tr. 503). Plaintiff also wanted to discuss anxiety versus depression, reporting dizziness and headaches but noting that a recent appointment with Dr. Bell for dizziness revealed no ear problems. *Id*. Plaintiff was assessed with dizziness, headache, chronic anxiety, and dysuria. (Tr. 503-504). Plaintiff was prescribed Meclizine 25 mg oral tablet. (Tr. 504). She was also instructed to take Alprazolam as prescribed for anxiety. *Id*.

### III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence but is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). If there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require the ALJ to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final step is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520, 416.920.

**IV.     Discussion:**

Plaintiff raises only one issue on appeal: whether the ALJ failed to properly evaluate the Plaintiff's subjective complaints. (ECF No. 15, p. 3).

In assessing the credibility of a claimant, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) or from 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929.[1] *See Schultz v. Astrue*, 479 F.3d 979, 983 (2007). The factors to consider are as follows: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the

---

[1] Social Security Regulations 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929 require the analysis of two additional factors: (1) "treatment, other than medication, you receive or have received for relief of your pain or other symptoms" and (2) "any measures you use or have used to relieve your pain or symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)." However, under *Polaski* and its progeny, the Eighth Circuit has not yet required the analysis of these additional factors. *See Shultz v. Astrue,* 479 F.3d 979, 983 (2007). Thus, this Court will not require the analysis of these additional factors in this case.

pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions. *See Polaski,* 739 at 1322.

The factors must be analyzed and considered in light of the claimant's subjective complaints of pain. *See id.* The ALJ is not required to methodically discuss each factor as long as the ALJ acknowledges and examines these factors prior to discounting the claimant's subjective complaints. *See Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000). So long as the ALJ properly applies these five factors and gives several valid reasons for finding that the Plaintiff's subjective complaints are not entirely credible, the ALJ's credibility determination is entitled to deference. *See id.*; *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006). The ALJ, however, cannot discount Plaintiff's subjective complaints "solely because the objective medical evidence does not fully support them [the subjective complaints]." *Polaski,* 739 F.2d at 1322.

When discounting a claimant's complaint of pain, the ALJ must make a specific credibility determination, articulating the reasons for discrediting the testimony, addressing any inconsistencies, and discussing the *Polaski* factors. *See Baker v. Apfel,* 159 F.3d 1140, 1144 (8th Cir. 1998). The inability to work without some pain or discomfort is not a sufficient reason to find a Plaintiff disabled within the strict definition of the Act. The issue is not the existence of pain, but whether the pain a Plaintiff experiences precludes the performance of substantial gainful activity. *See Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

In the present action, this Court finds the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the *Polaski* factors. The ALJ considered Plaintiff's own reports, including a function report where Plaintiff stated her daily activities included taking care of her children, taking care of her personal needs, preparing meals, doing laundry and dishes, driving, shopping in stores, and handling money. (Tr. 25, 204-211). Plaintiff also stated in one of her

function reports she could walk a half mile before needing to rest. (Tr. 209). She reported she could follow written instructions and spoken instructions. (Tr. 209, 227). In addition, she stated she could get along with authority figures. (Tr. 210, 228). However, she did note she could not handle stress or changes in routine well. *Id*. "[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain." *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009).

While the ALJ did consider Plaintiff's medical records, the ALJ also considered Plaintiff's daily activities, medication, aggravating factors, functional limitations, and treatment in his decision to discount Plaintiff's subjective complaints. (Tr. 25). Thus, the Court cannot find a basis for reversal on this issue. *See Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (recognizing that deference is warranted where the ALJ's credibility determination is supported by good reasons and substantial evidence).

**V.     Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. Plaintiff's Complaint will be dismissed with prejudice.

IT IS SO ORDERED this 17th day of June 2021.

*/s/Christy Comstock*
HON. CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE